WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nichols Santucci, Babette Santucci, husband and wife,<br><br>    Plaintiffs,<br><br>vs.<br><br>Unites States State Department,<br><br>    Defendant. | No. CV-04-2499-PHX-SRB<br><br>**ORDER** |

This case involves Plaintiffs Nichols and Babette Santucci's attempt to renounce their United States citizenship. At issue is Defendant United States Department of State's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. 25).

**I.     BACKGROUND**

Plaintiffs[1] Nichols and Babette Santucci appeared at the United States Consulate in Nogales, Sonora, Mexico on July 21, 2004 with the intention of voluntarily renouncing their

---

[1] Although the Amended Complaint uses the singular "Plaintiff" throughout, including the caption, the Court assumes, from the context, that all references to "Plaintiff" actually refer to both Nichols and Babette Santucci. Therefore, the Court will refer to Plaintiffs in the plural.

1  United States citizenship. (Pl.'s Am. Compl. ("Compl.") at 3.) Plaintiffs met with Consulate
2  Officer Veronica Fuentes ("Fuentes") on that date, provided proof of identity and citizenship,
3  and were instructed to complete an Application for Determination of Citizenship. Plaintiffs
4  were then given an appointment for July 26, 2004. (Def.'s Ans. to Am. Compl. at 2.)

5        Plaintiffs returned to the Consulate on July 26, 2004 where they read aloud the
6  Statement of Understanding Concerning the Consequences and Ramifications of
7  Renunciation and then recited and signed the Oath of Renunciation ("Oath"). Plaintiffs
8  requested, but did not receive, a copy of the Oath signed by Fuentes, who informed Plaintiffs
9  that she would forward the completed documents to Defendant in Washington, D.C. for final
10 approval. Fuentes further informed Plaintiffs that they were still considered U.S. citizens
11 until final approval by Defendant of a Certificate of Loss of Nationality of the United States
12 ("CLN").

13       Plaintiffs wrote letters to Defendant dated July 28, 2004 requesting that Defendant,
14 pursuant to 5 U.S.C. § 552a, amend its records "to reflect that a loss of U.S. Citizenship had
15 occurred" and that Plaintiffs were Stateless Persons, and to issue CLNs to Plaintiffs in
16 accordance with 8 U.S.C. § 1501. (Compl. at 4.)

17       On August 24 and September 1, 2004, Fuentes mailed identical letters to each Plaintiff
18 informing them that Defendant concluded that Plaintiffs "did not in fact intend to relinquish
19 U.S. citizenship" because Plaintiffs had stated on July 26, 2004 at the Consulate that they
20 "had no other nationality and that [they] intended to reside in the United States without
21 appropriate documentation as [aliens] under the Immigration and Nationality Act (INA)."
22 (Compl., Ex.[2] 6 & 7.) Therefore, Defendant would not issue CLNs in Plaintiffs' names.
23 Specifically, the letters informed Plaintiffs that:

> The Department has adopted a position that the intention to
> relinquish U.S. nationality for purposes of section 349(a) of the

---

[2] Plaintiffs apparently did not attach exhibits to their Amended Complaint. Therefore, the exhibits referred to by the Court are the Exhibits submitted by Plaintiffs with their original Complaint.

- 2 -

|   |   |
|---|---|
| 1 | INA does not exist where a renunciant plans or claims a right to |
| 2 | reside in the United States, a right inherent in U.S. nationality, |
| 3 | unless the renunciant demonstrates that residence will be as an |
| 4 | alien properly documented under U.S. law.  This decision was |
| 5 | upheld by the U.S. Court of Appeals for the District of |
| 6 | Columbia in 1998 in Lozada-Colon vs. the Department of State. |

In a letter dated September 8, 2004 responding to Fuentes' denial letter, Plaintiffs claim they "never once indicated that we intended to reside in the United States let alone do so without being documented as an alien under the Immigration and Nationality Act," and requested a review of Defendant's decision in accordance with 5 U.S.C. § 552a(d)(3).  (Compl. at 5, Ex. 8.)

Defendant, in a letter dated September 24, 2004, wrote that at the time Plaintiffs took the Oath, Plaintiffs told Fuentes that they "had no other citizenship and that if found to have lost citizenship, [they] were unsure where [they] would reside."  (Compl., Ex. 9.)  This letter informed Plaintiffs that Defendant had learned that after taking the Oath, Plaintiffs returned to the United States, had been residing in the United States since their "purported renunciation," and had "made no attempt to be documented" as aliens under INA.  (Compl., Ex. 9.)  According to the letter, Defendant concluded that Plaintiffs "did not in fact intend to relinquish U.S. citizenship when [they] executed the Oath of Renunciation on July 26, 2004."  (Compl., Ex. 9.)  Therefore, the letter states, Defendant could not approve the CLN forwarded by the Consulate, and that Defendant considers Plaintiffs to be U.S. citizens. (Compl., Ex. 9.)

Plaintiffs subsequently filed suit, claiming this Court has jurisdiction under the Privacy Act of 1974, 5 U.S.C. § 552a(g)(1)(A), and under the Little Tucker Act, 28 U.S.C. § 1346(a)(2).  Plaintiffs allege that Defendant: (1) violated their right to renounce U.S. citizenship in accordance with 8 U.S.C. § 1481(a)(5); (2) violated their rights by failing to amend Plaintiffs' records and failing to acknowledge receipt of Plaintiffs' request in accordance with 8 U.S.C. § 1501 and 5 U.S.C. § 552a(d)(2) & (3); and (3) violated its own

administrative procedure for cases of voluntary renunciation of U.S. citizenship as set forth in Defendant's Foreign Affairs Manual ("FAM") at 7 FAM 1253 *et seq.* (Compl. at 5, 6.)

Plaintiffs request that this Court: (1) order Defendant to amend its records to reflect that Plaintiffs are no longer U.S. citizens and that Plaintiffs are Stateless Persons; (2) order Defendant to issue CLNs in Plaintiffs' names; (3) issue an order that Defendant is "estopped forever from any further violation of the right to renounce U.S. Citizenship in accordance with 15 Stat. 249"; and (4) order Defendant to pay punitive damages to Plaintiffs in accordance with 5 U.S.C. § 552a(g)(4)(A) & (B). (Compl. at 6.)

## II.   LEGAL STANDARDS AND ANALYSIS

Defendant moves to dismiss this Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946) (a decision on whether the complaint states a cause of action "must be decided after and not before the court has assumed jurisdiction over the controversy"); *Drewien v. Medford Police Dep't*, 2004 WL 948347, *1 (D. Or. Apr. 30, 2004) ("[A] motion to dismiss based on lack of subject matter jurisdiction should be addressed by the court before any other Rule 12 motion to prevent a court without jurisdiction from prematurely dismissing a case with prejudice.") (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) ("The party asserting jurisdiction has the burden of proving all jurisdictional facts.") (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936); *Fenton v. Freedman*, 748 F.2d 1358, 1359 n.1 (9th Cir. 1984)). In this case, Plaintiffs are asserting that this Court has jurisdiction to hear their claim. Therefore, Plaintiffs bear the burden of proving jurisdiction.

Defendant argues Plaintiffs have failed to allege a waiver of sovereign immunity by the United States.[3] The issue of whether the United States has waived sovereign immunity for a particular type of suit is a question of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *United States v. Nye County, Nev.*, 178 F.3d 1080, 1089 n.12 (9th Cir. 1999). An attack on subject matter jurisdiction is fundamental to a district court's ability to hear a case. *See Toumajian v. Frailey,* 135 F.3d 648, 652 (9th Cir. 1998) ("[I]n all actions before a federal court, the necessary and constitutional predicate for any decision is a determination that the court has jurisdiction–that is the power–to adjudicate the dispute.") (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)). A plaintiff may sue the United States "only if Congress has waived sovereign immunity for the lawsuit," and may bring a claim in federal district court "only if Congress has provided for jurisdiction there." *N. Star Alaska v. United States*, 9 F.3d 1430, 1432 (9th Cir. 1993) (citations omitted). Thus, the burden is on Plaintiffs to show that the United States has waived its sovereign immunity. *See Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995) (citation omitted).

Plaintiffs have suggested three possible bases for this Court's jurisdiction to hear Plaintiffs' case: (1) 28 U.S.C. § 1331; (2) the Little Tucker Act; and (3) the Privacy Act. While 28 U.S.C. § 1331 confers subject matter jurisdiction on the district court for actions that arise under the Constitution and laws of the United States, the statute itself is not a general waiver of sovereign immunity. *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) (noting that the general federal question statute merely establishes when a subject matter is within the competence of a federal court to entertain). Therefore, Plaintiffs must prove the United States has waived its sovereign immunity in another statute.

---

[3] Although Plaintiffs filed suit against an agency of the United States, the suit is in effect one against the United States. *See Balser v. Dep't of Justice*, 327 F.3d 903, 906 (9th Cir. 2003) ("In sovereign immunity analysis, any lawsuit against an agency of the United States or against an officer of the United States in his or her official capacity is considered an action against the United States.").

- 5 -

### A.     The Little Tucker Act

Plaintiffs argue that this Court has jurisdiction under 28 U.S.C. § 1346(a)(2), known as the Little Tucker Act ("Act"). The Act waives sovereign immunity and provides the district court concurrent jurisdiction with the United States Court of Federal Claims for certain actions not exceeding $10,000.[4] 28 U.S.C. § 1346(a)(2); *N. Star Alaska*, 9 F.3d at 1432; *Price v. U. S. Gen. Serv. Admin.*, 894 F.2d 323, 324 (9th Cir. 1990). Specifically, the Act provides this Court with jurisdiction over a civil action or claim against the United States "founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2). Thus, under the Act, a party's claims must either rest upon a contract, "seek the return of money paid by them to the Government," or establish an entitlement to money damages under a federal statute that "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Testan*, 424 U.S. 392, 400, 96 S. Ct. 948, 954 (1976) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009, 178 Ct. Cl. 599, 607 (1967)).

The Act provides jurisdiction over awards of damages but not equitable relief such as injunctive or declaratory relief or mandamus. *Richardson v. Morris*, 409 U.S. 464, 465, 93 S. Ct. 629, 630-31 (1973) ("[T]he Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); *Lee v. Thornton*, 420 U.S. 139, 140, 95 S. Ct. 853, 854 (1975) ("The Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief.") (citations omitted); *Ben-Shalom v. Sec'y of Army*, 807 F.2d 982, 988 (Fed. Cir. 1986) (holding that Tucker Act does not provide jurisdiction for petitioner's suit for writ of mandamus, an

---

[4]The Tucker Act, 28 U.S.C. § 1491, governs claims over $10,000. Those claims must be heard in the Court of Federal Claims, but the grant of jurisdiction under the Tucker Act and the Little Tucker Act is the same. *See Kipperman v. McCone*, 422 F. Supp. 860, 868 (D.C. Cal. 1976).

equitable proceeding, when petitioner does not also request money damages); *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages.").

In this case, Plaintiffs have not stated how the Act applies.  The relief requested by Plaintiffs is equitable in that it requests that this Court: (1) order Defendant to amend its records to reflect that Plaintiffs are no longer U.S. citizens and that Plaintiffs are Stateless Persons; (2) order Defendant to issue CLNs to Plaintiffs; and (3) issue an order that Defendant is "estopped forever from any further violation of the right to renounce U.S. Citizenship in accordance with 15 Stat. 249."[5]  (Compl. at 6.)  Plaintiffs have not alleged that they suffered any actual damages or that they are entitled to damages from Defendant. Therefore, the Act does not provide this Court with jurisdiction over Plaintiffs' claim.

### B. The Privacy Act

Plaintiffs argue that jurisdiction is also founded on the Privacy Act, 5 U.S.C. § 552a(g)(1)(A), which allows an individual to bring a civil action in the district courts against an agency that refuses to review or amend an individual's record as requested.  While the Privacy Act does grant district courts jurisdiction in some instances, it is principally a means for "contest[ing] the accuracy of administrative records," and "does not authorize relitigation of the substance of agency decisions." *Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994) (citations omitted).  Thus, the Privacy Act only "allows for the amendment of factual or historical errors.  It is not . . . a vehicle for amending the judgments of federal officials or of other parties as those judgments are reflected in records maintained by federal agencies." *Rogers v. U.S. Dep't of Labor*, 607 F.Supp. 697, 699 (N.D. Cal. 1985) ("[The Privacy Act] may not be employed as a skeleton key for reopening consideration of unfavorable federal agency decisions.").

---

[5] Plaintiffs have also requested punitive damages under the Privacy Act.  Even if the Privacy Act authorized punitive damages, which it does not, Plaintiff cannot create subject matter jurisdiction under the Tucker Act by seeking punitive damages under the Privacy Act.

Plaintiffs in this case attempt to use the Privacy Act to have the Court order Defendant to amend its records to reflect that Plaintiffs are no longer U.S. citizens and that Plaintiffs are Stateless Persons. (Compl. at 6.) These are not factual errors that can be corrected by the Privacy Act. Both determinations–that Plaintiffs are no longer U.S. citizens and are Stateless Persons–are judgments by Defendant based upon Plaintiffs' Oath and Defendant's determination of Plaintiffs' subjective intent at the time they took the Oath. *See Vance v. Terrazas*, 444 U.S. 252, 259, 100 S. Ct. 540, 545 (1980) (noting that expatriation requires that the citizen not only voluntarily commit an expatriating act prescribed in 8 U.S.C. § 1481(a), but also requires an intent to relinquish citizenship). Plaintiffs clearly disagree with Defendant's judgment, but the Privacy Act is not the vehicle for reconsideration of Defendant's decision, and the Privacy Act does not provide this Court jurisdiction over Plaintiffs' claims. Because this Court is granting Defendant's Motion to Dismiss for lack of subject matter jurisdiction, it need not discuss the merits of Defendant's argument that Plaintiffs failed to state a claim.

**IT IS ORDERED** granting Defendant's Motion to Dismiss (Doc. 25).

DATED this 21st day of November, 2005.

_____
Susan R. Bolton
United States District Judge